UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALI AL-MAQABLH,

    Plaintiff,

vs.

UNIVERSITY OF CINCINNATI
COLLEGE OF MEDICINE, et al.,

    Defendants.

Case No. 1:11-cv-531

BECKWITH, J.
BOWMAN, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Ali Al-Maqablh, proceeding *pro se*, brings this action against the University of Cincinnati College of Medicine ("the University"), Jorge Moscat, Maria Czyzyk-Krezeska, Suzan Waltz, Robert Brackenbury, and Maria Diaz-Meco alleging employment and disability discrimination as well as "conspiracy." Plaintiff's complaint arises from his termination from the University's graduate program on June 19, 2009.

This matter is now before the Court on the University's motion for judgment on the pleadings (Doc. 21) pursuant to Federal Rule of Civil Procedure 12(c) and the parties' responsive memoranda. (Docs. 25, 26). Also before the Court are Plaintiff's motions to change venue and to amend the complaint. (Docs. 28, 29). For the reasons set forth herein, I now recommend that the University's motion for judgment on the pleadings be **GRANTED in part and DENIED in part** and the remaining pending motions be **DENIED.**

    I.  **Facts and Procedural History**

On April 14, 2010, Plaintiff submitted a charge of discrimination on the basis of race and national origin to the Equal Employment Opportunity Commission ("EEOC").

(Doc. 3). Plaintiff's charge asserted that: (1) he was a natural born citizen of Jordan; (2) he was employed as a Graduate Research Assistant in the Department of Cancer and Cell Biology at the University of Cincinnati College of Medicine ("the University"); (3) he was discharged from the graduate program on June 19, 2009, for alleged poor academic performance and inability to obtain a faculty advisor; and (4) "similarly situated non-minority Graduate Research Assistants who had no greater academic performance and who also were delayed in obtaining faculty advisors were permitted to continue the program." (Doc. 3). On May 11, 2011, the EEOC closed its file on Plaintiff's charge and issued a "Dismissal and Notice of Rights" letter, noting that it was "unable to conclude that the information obtained establishes violations of the statutes." (Doc. 3).

Thereafter, Plaintiff filed the instant action in August 2011 against Defendants seeking redress for "discrimination," "conspiracy," and "neglecting disability." The complaint alleges that he was (1) placed on academic probation, (2) dismissed from the University's graduate program, and (3) terminated from his graduate research assistant position based on "rules that don't exist." (Doc. 3 at 2). Plaintiff's complaint further alleges that Defendants Jorge Moscat, Maria Czyzyk-Krezeska, Suzan Waltz, Robert Brackenbury, and Maria Diaz-Meco "conspired to terminate [him] from the graduate program." *Id.* As relief, Plaintiff requests to be reinstated to the graduate program, to receive credit for exams that were not factored into his grades or factored improperly and award him a Master's of Science degree. (Doc. 3 at 3). Plaintiff also requests this Court to order the University to compensate him for pain and suffering and to pay his

salary from 2009 – 2011. *Id.* Finally, Plaintiff requests all "conspirators" be fired and reprimanded and for the University to enforce its ethical guidelines. *Id.*

Plaintiff's complaint also attached the "Charge of Discrimination" filed with the EEOC on April 14, 2010. *Id.* Additionally, Plaintiff listed "Title VII, American with Disabilities Act ("ADA"), National Origin and Race Employment Discrimination, neglecting disability (medical), and conspiracy" in the "cause of action" section on the Civil Cover Sheet that also accompanied the complaint. (Doc. 3 at 6).

## II. Analysis

### A. Standard of Review under Rule 12(c)

A district court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001). Accordingly, "we construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true*.*" *Commercial Money Ctr.*, 508 F.3d at 336. To withstand a Rule 12(c) motion for

judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.*

### B. The University's Motion for Judgment on the Pleadings

The University contends, *inter alia,* that Plaintiff's ADA and § 1983 claims as well as any state law claims should be dismissed because Plaintiff's claims are barred by the Eleventh Amendment. (Doc. 21 at 4-5, 9-10). The University further contends that Plaintiff's Title VII claim should be dismissed because Plaintiff was not an employee for the purposes of Title VII. (Doc. 21 at 11). Finally, the University contends that Plaintiff's claim against Jorge Moscat, Maria Czyzyk-Krezeska, Suzan Waltz, Robert Brackenbury, and Maria Diaz-Meco should be dismissed because Plaintiff failed to serve these individuals pursuant to Federal Rules of Civil Procedure 4.1(m). (Doc. 21 at 3). The University asserts that Plaintiff's Rehabilitation Act claim should be dismissed with prejudice because Plaintiff has not stated a claim upon which relief can be granted. (Doc. 21 at 6). The University also maintains that Plaintiff's conspiracy claims should be dismissed because the University is not considered a person under the legislation's definition of "persons." (Doc. 21 at 8, 10).

Plaintiff maintains that he earned honorable grades and that the EEOC investigation revealed that "non-minority personals [sic] who deserved probations and penalties were not penalized to which the defendants respond by saying that they were 'overlooked.'" (Doc. 25, ¶ 9). Plaintiff further asserts that he was granted a disability status and "took several tests under the provided accommodation." (Doc. 25, ¶ 10). Finally, "Plaintiff concedes that his disability was not the *sole* reason for the discrimination he suffered but submits that the defendants have knowingly, willingly and

preemptively violated the statues [sic] delineated by Title I, Title VII and section 504." (Doc. 25, ¶ 12).

For the reasons explained below, the undersigned finds that Defendant's motion for judgment on the pleadings is well-taken and should be granted.

*1. Plaintiff's discrimination claims*

*a. Title VII*

Plaintiff's complaint asserts that the University discriminated against him based on his race and national origin in violation of Title VII. Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .or national origin." 42 U.S.C. § 2000e-2(a)(1).

The University first contends that Plaintiff's Title VII claim should be dismissed because as a graduate student, Plaintiff is not an employee protected by the statue. However, the Sixth Circuit has not addressed whether a graduate student assistant is an "employee" for purposes of Title VII. *Ivan v. Kent State Univ.*, 863 F. Supp. 581, 585 (N.D. Ohio 1994) *aff'd,* 92 F.3d 1185 (6th Cir. 1996). Here, Plaintiff's EEOC charge of discrimination asserts that he was employed as a Graduate Research Assistant at the University of Cincinnati College of Medicine. (Doc. 3 at 5). The complaint further alleges that he received a salary from 2009 to 2011 for his work in the graduate program. Viewing such allegations in light most favorable to Plaintiff, the undersigned finds that Plaintiff could be considered an employee for purposes of Title VII.

Even assuming Plaintiff is an employed covered under the statute; Plaintiff's complaint, as currently written, fails to contain sufficient allegations that could establish a *prima facie* case of race and/or national origin discrimination based upon his employment with the University. Notably, to establish a Title VII race discrimination claim, a plaintiff must show (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for his position; and (4) a similarly-situated non-protected employee received preferential treatment. *Phillips v. Veterans Admin. Hosp.,* 11-2396, 2012 WL 2149798 (6th Cir. June 13, 2012) (citing *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 703 (6th Cir. 2007)). Neither Plaintiff's complaint nor the information contained in his EEOC charge contain sufficient factual allegations that he was qualified for his position.

Notwithstanding this determination, in the interests of justice, the undersigned finds that Plaintiff should be granted leave to further amend this allegations relating to his Title VII claims. *See also In EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) ("where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."). Although Plaintiff's amended complaint does not contain sufficient factual allegations to establish a *prima facie* case of discrimination, the Court finds that dismissal is improper at this time. In light of the nature of the allegations in the complaint, the undersigned finds that Plaintiff should be granted leave to file an amended complaint prior to the dismissal of his Title VII claims.

*b. Plaintiff's Disability Related claims*

Plaintiff's complaint also includes claim for "neglecting disability" wherein he asserts that "Professor Brackenbury deducted points from my exams for handing in a test late when it was the recommendation of the disability office." (Doc. 3 at 3). To the extent that these allegations could be construed as asserting claims for disability discrimination under the American's with Disabilities Act ("ADA") 42 U.S.C. §§ 12101-12213 and/or the Section 504 of the Rehabilitation Act of 1973 ('Rehabilitation Act"), 29 U.S.C. § 794 such claims should be dismissed. [1]

A person complaining of an alleged ADA violation is required to file a charge with the EEOC within 180 days of the occurrence of the discriminatory act. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e). *See also Taylor v. Donahoe*, 452 Fed. Appx. 614, 616 (6th Cir. 2011). The EEOC then conducts an investigation and, once the administrative process has been exhausted, the EEOC sends the complainant a right to sue letter. 42 U.S.C. § 2000e-5(f)(1). To be considered timely filed, a civil action in federal court must then be filed within 90 days of the receipt of the right to sue letter. 42 U.S.C. § 2000e-5(f)(1); see *also Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029 (6th Cir. 1998) (right to sue letter is a condition precedent to filing a cause of action).

As noted above, the Charge of Discrimination attached to Plaintiff's complaint indicated that he was discriminated against based on his race and/or national origin. There is no indication from the complaint or attached EEOC charge that Plaintiff has exhausted his administrative remedies relating to any disability claims. In filing his charge of discrimination with the EEOC, Plaintiff never checked the box for "disability."

---

[1] The University contends that Plaintiff is not an individual with a disability and has not requested a reasonable accommodation. (Doc. 9, ¶ 4-5).

Furthermore, in describing the alleged discrimination in his EEOC charge, Plaintiff refers only to his race, ethnicity and national origin as improper basis for his termination from the program. Accordingly, the University is entitled to judgment on the pleadings with respect to Plaintiff's purported ADA claim.

Additionally, any alleged claim made under the Rehabilitation Act should also be dismissed because Plaintiff neither asserts that his disability was the sole cause for the alleged illegal discrimination nor exhausted all administrative remedies while pursuing his Rehabilitation Act claim. In order to establish a claim under the Rehabilitation Act, Plaintiff must show: (1) he is disabled, (2) he is otherwise qualified to continue in the University, and (3) he was dismissed from the University on the basis of his handicap or disability. *Carten v. Kent State Univ.*, 78 F. App'x 499, 500 (6th Cir. 2003) (citing *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) (emphasis added). Here, the University contends that Plaintiff is not an individual with a disability and has not requested a reasonable accommodation. (Doc. 9, ¶ 4-5). Notably, a publicly funded university is not required to provide accommodation to a student under the ADA or Rehabilitation Act until the student provides a proper diagnosis of his claimed disability and specifically requests an accommodation. *Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998). Plaintiff's complaint does not does identify his alleged disability nor allege that he requested an accommodation. Furthermore, Plaintiff concedes that his disability was not the sole reason for the discrimination he suffered (Doc. 25, ¶ 12).

      *2. Plaintiff's conspiracy claims and purported civil rights claims are barred by the Eleventh Amendment of the United States Constitution.*

Absent an expressed waiver, the Eleventh Amendment bars suit against a state or one of its agencies or departments in federal court *regardless of the nature of the relief sought*. *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 100 (1984) (emphasis added); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100-01, (1984), by citizens of another state, foreigners or its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). Thus, the State of Ohio is immune from suit unless it waives its sovereign immunity. *Mixon v. Ohio*, 193 F.3d 389, 396-97 (6th Cir. 1999). Additionally, the University has neither constitutionally nor statutorily waived its Eleventh Amendment rights. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999); *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976).

The University is an arm of the State of Ohio and, therefore, entitled to Eleventh Amendment immunity. *Dillion v. Univ. Hosp.*, 714 F.Supp. 1384 (S.D. Ohio 1989). Accordingly, to the extent Plaintiff's complaint can be liberally construed as asserting a federal conspiracy claim under §§ 1985 and/or 1986, such a claim is barred by Eleventh Amendment immunity. *Moss v. Columbus Bd of Educ.*, 2001 WL 1681117 *9 (S.D. Ohio 2001) (Eleventh Amendment immunity extends to section 1985 claims).

Plaintiff asserts that the text of the Eleventh Amendment is silent on suits brought by a state's own citizens, however, the Supreme Court has repeatedly construed the Eleventh Amendment to bar suits brought against a state by its own citizens. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 618 (2002); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Hans v. Louisiana*, 134 U.S. 1 (1890).  Plaintiff has cited no controlling law that successfully supports his claim that the State of Ohio, specifically The University of Cincinnati College of Medicine has waived its sovereign immunity; therefore, these claims should be dismissed with prejudice.

Additionally, such claims should be dismissed because of the Intra-corporate Conspiracy Doctrine.  To successfully plead on a "conspiracy to interfere with civil rights" claim, Plaintiff must show:

> 1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).  The plaintiff must also show the conspiracy was motivated by racial or other class-based animus.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993).

Here, Plaintiff fails to provide sufficient allegations to establish the first prong of a conspiracy claim.  According to the Intra-Corporate Conspiracy Doctrine, "where 'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th

Cir. 2008). Accordingly, Plaintiffs' conspiracy claims under 42 U.S.C. § 1985 and/or 42 U.S.C. § 1986 should be dismissed.

>    3. *Plaintiff's claims against the individual Defendants should also be dismissed.*

The undersigned also finds that the claims against the individual defendants fail as a matter of law. *See Wathen v. General Electric Co.*, 115, F.3d 400, 404 n.6, 405 (6th Cir. 1997) (Neither Title VII nor the ADA provide for individual liability); *See also Amadasu*, 514 F.3d at 507 (conspiracy claim barred by 'intracorporate conspiracy' doctrine," which provides that where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy).

In light of the foregoing, the undersigned finds that Defendant's motion for judgment on the pleadings is well-taken and should be granted. [2]

### C. Plaintiff's Motions to Change Venue and to Amend Complaint

Subsequent to the filing of Defendant's motion for judgment on the pleadings, Plaintiff filed a motion to change venue and a motion to amend the complaint. Plaintiff's motions are not well-taken.

In his motion to change venue, Plaintiff seeks to move this matter to United States District Court for the Western District of Kentucky because Plaintiff is a "two-year

---

[2] The University further contends that Plaintiff has yet to demonstrate that the individual defendants have been properly served in this matter. Pursuant to Fed. R. Civ. P. 4(m), Plaintiff must have served the individual defendants within 120 days after the complaint is filed. In this case, Plaintiff was granted IFP status and the US Marshalls were ordered to serve the Defendants with a summons and copy of the complaint. (Doc. 2). Plaintiff was required to provide the completed summons' forms to the Marshalls. Plaintiff, however, listed the University and each individual Defendant on the same summons. As a result, only the University received proper service and the individual defendants have yet to be served. Thus, the Court does not have jurisdiction over those defendants. However, even assuming the individual defendants were properly served, the claims asserted against them fail as a matter of law for the reasons stated above.

resident of Kentucky" and he will "more easily be able to obtain counsel who has passed the bar in Kentucky." (Doc. 28). 28 U.S.C. § 1404(a) provides as follows: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "The moving party bears the burden of showing the need to transfer venue." *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002). Plaintiff has failed show the need to transfer venue in this matter.

Plaintiff also moves to amend his complaint in order to add a breach of contract claim pursuant to 28 U.S.C. § 1367. (Doc. 29). However, such a claim fails as a matter of law, because any Ohio law claims against the University, including a state law breach of contract claim, are barred by sovereign immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Alia v. Michigan Supreme Court,* 906 F.2d 1100, 1102 (6th Cir. 1990).

### III. Conclusion

For these reasons, the undersigned hereby **RECOMMENDS** that the Defendant's motion for judgment on the pleadings (Doc. 21) be **GRANTED in part** and **DENIED in part,** as outlined above, Plaintiff's pending motions be **DENIED** (Docs. 28, 29) and Plaintiff be given **14 days to file an amended complaint** relating only to his Title VII claims against the University.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALI AL-MAQABLH,

       Plaintiff,

vs.

UNIVERSITY OF CINCINNATI
COLLEGE OF MEDICINE, et al.,

       Defendants.

Case No. 1:11-cv-531

BECKWITH, J.
BOWMAN, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).